Nelson, J.,
delivered the opinion of the Court.
This attachment bill was filed on the 18th October, 3864, against Sessler & Fagg, to recover a debt of $315.00. The attachment issued in the case, was levied *743 on the 26th October, 1864, by the Sheriff of Blount, on certain lands described in his return. Judgment pro oonfesso was rendered 23d of May, 1865, as of the last rule day of the court. A decree was pronounced in favor of complainants, at the May Term, 1865, for $389.92, and costs. It was directed, in the decree, that the Master, after haviog first advertised the time and place of sale, for four successive weeks in Brown-low’s Knoxville Whig, and five public places in Blount County, should expose the lands attached, at public sale, to the highest bidder, and sell the same on six mouths’ credit, in bar of the equity of redemption. A sale was made by the Master on the 25th of September, 1865, at which Joseph M. Greer became the purchaser, at $400. The sale was duly reported, but on the 26th of December, 1865, it was set aside by order of the Chancellor, whose decree recites that the land was bid off by the purchaser at an inadequate price, and it was ordered that “the Clerk and Master proceed to re-advertise and sell said lands, or so much thereof as will be necessary to pay and satisfy • complainants decree, upon a credit of nine and . eighteen months, in equal instalments,” &c.
The Master was directed, in the decree, to make report of sale at the next term; and the decree declares further, that, “at request of complainants, said sale, as in the original decree provided,' shall be made in bar of the right of defendant, or any of their creditors or assignees, to redeem the same.” In the progress of the cause, the Master made a further report, in which, among other things, he states that in pursuance of the *744 last mentioned decree, “and in pursuance of notices given by me, [him,] for the legal space of time, in five different places in Blount County, giving the legal notices required;” he sold the land, in the pleadings mentioned, known as the Bicknell property, and lying in sight of Maryville, without survey, at public auction, at the Court-house door, on the 5th of March, 1866, within the legal hours, &c., to M. McTeer, at the sum of $1,500, and took his notes, with security, retaining a lien for the purchase money. On the 11th of December, 1866, an order was made in the cause, declaring that “on application of complainants, they have leave to file an amended and supplemental bill, so as to bring in new parties who have liens on the lands attached in this cause, six months granted.” No amended or supplemental bill was filed, but on the 13th December, 1867, a decree was pronounced, in which the report of sale is set out, and by which the same is in all things confirmed, the title of J. C. Eagg and Henry Sessler divested out of them, and vested in fee, in the purchaser at the Master’s sale; in the same decree, judgment was rendered in favor of the successor of the former Clerk and Master, against the purchaser at the sale, and his security, for the sum of $1,557.99, and an execution awarded; and it was directed that the Master should pay out of the moneys, when collected, the amount due complainants, and the costs, and that he should hold the balance subject to the direction of the court; and a writ of possession was awarded, to place said M. McTeer in possession of the premises. Near the close of said decree, it is stated that “in this cause, *745 W. E. McGinley comes for the defendants, presented an affidavit, opposing the confirmation of the sale in this case, and the Court refused to set aside the sale; and the affidavit is made part of the record, marked Exhibit A, to the action of the Court refusing to set aside the sale; and from the decree in this case, the defendant, Eagg, prays an appeal,” <fcc.
The affidavit of "W. D. McGinley, thus made part of the record, states that, “on the first day of this term of the court, he had an interview with the respondent, Fagg, [who] sent him to Hon. O. P. Temple to settle the amount of this decree, and that a few moments after that affiant was informed by some of the parties that it was, or would be, arranged; that the money was to be paid, and that would be an end to the matter; then on Thursday, late in the evening, affiant was informed that steps were being taken to have the sale to McTeer confirmed. Affiant immediately went to his client, Fagg, and was informed by him that Friday morning was set by him and the said Temple to pay him (Temple) the money; but Fagg handed affiant the amount of the decree in favor of complainants, being about $449. Affiant then came, before the decree in this case had gone down on the record, and tendered to the solicitor of complainants, Abbott, (Temple,) the amount of the decree. Affiant states that, at the time the motion was made to confirm the sale, he had not the least knowledge that such a thing would be attempted. Affiant states that these are, as he believes, good and valid objections to the sale, and these he would, for respondent surely have made, if he had not been off his guard, in the manner above stated.
*746 Affiant states that the sale is subject to exception, because the land was, when sold, levied on by a large number of other attachments from this Court, which are matters of record here, and from the Circuit Court of Blount; and so, at the sale, the land only brought $1,500, which is a grossly inadequate price. Affiant states that it was then worth more' than $3,000. Affiant states, further, that, at the time of the sale, Eagg the respondent, and Sessler, were both driven from the country, and could not see to purchasing the land, or having it done. Therefore, affiant states that this sale ought not to have been confirmed.
No depositions were taken in the case. In the judgment pro confesso of 23d May, 1865, it is stated that publication was regularly made, requiring respondent to appear and defend; and, in the decree, which seems to have been pronounced on the same day, it is recited, that “publication has heretofore been regularly made, for four successive weeks before court, in Brown-low’s Knoxville Whig and Rebel Ventilator,” aud that defendants are non-residents of the State. No reference is made to the fact of publication in the decree of 26th December, 1865, under which the second sale was made.
These are all the material facts appearing in the record, except that, .upon the record, it appears that O. P. Temple filed the bill and signed the prosecution and attachment bond, as attorney for complainants.
Eor the purchaser, it is insisted that the decree at May Term, 1865, was a final decree, as judgment was then rendered for the amount of complainant’s debt and costs, and a sale of the land then ordered. The rea *747 soning of the Court, in Gill v. Greed, 3 Cold., 297, unquestionably sustains this proposition; hut that case was brought up by writ of error, and not by appeal. That opinion is supported by Delap v. Hunter, 1 Sneed, 101, and other cases determined before the enactment of the Code. The Act of 1835, c. 3, s. 17, Car. & Me., 237, provided, that “whenever a decree shall be made, in any inferior court, having chancery jurisdiction, determining the principles involved in the cause, and an account shall be ordered to be taken, it shall be in the discretion of the Court below, to allow an appeal to be taken, before the account is made, to the Supreme Court,” etc. This statute seems to have been incorporated into and enlarged by the Code, 3157, which does not restrict the appeal to cases of account merely, but extends it to decrees ordering a sale or partition. The provisions of that section of the Code are that “the Chancellor or Circuit Judge may, in- his discretion, allow an appeal from his decree, in equity causes, determining the principles involved, and ordering an account, or a sale, or partition, before the account is taken, or the sale or partition is made; or he may allow such appeal on overruling a demurrer; or he may allow any party to appeal from a decree which settles his right, although the ease may not be disposed of as to others.”
Whatever may have been the previous decisions of this and other courts, it is manifest, from the very terms of this section, that, in the view of the Legislature, which enacted the Code, decrees ordering accounts, par *748 titions and sales, were not final, and that it required special legislation to authorize an appeal before the reports were made and the case finally disposed of. It is not obligatory upon us to consider the cases determined in other courts, or to review our own eases, before the Code. It is sufficient to declare, that, in our opinion, the intention of the Legislature was to allow the appeal as a matter of right, when the last decree is pronounced in a cause in the court below; and as a matter of favor, in the cases specified in section 3157, and that, in the case before us, the right existed when the decree was pronounced on the 13th of December, 1867, and the appeal then granted brings up the entire cause. This question has been also considered, at the present term, in the cases of Mathes v. Meek & Simpson,† and Harrison & Brothers v. Farnsworth,‡ and its further discussion is not demanded by the facts of this case.
Without declaring any opinion upon the questions raised in argument, as to the validity of the levy, the mode of advertising the second sale, and the propriety of selling without the right of redemption; and without considering vffiat was the effect, if any, of the leave granted, on the application of complainants, to file an amended and supplemental bill ten months after the second sale occurred; of their failure to file it, and of their delay, for tw'enty-one months after the sale, to obtain a decree of confirmation, we cannot ignore the strong statements made in the affidavit of W. D. McGinley. It might, perhaps, have been more regular to present the *749 matters contained in that affidavit in a petition for rehearing; but in reviewing the action of the Chancellor, we must consider the case just as it was presented to him; and, in this view, it appears that after the decree of confirmation was pronounced, but before it was entered -of record, the amount due complainants was tendered to their attorney, and on this ground the confirmation of the sale was opposed, and the Chancellor was requested, but refused, to set the sale aside. There can be no question that the decree was perfectly within the control of the Chancellor. It had not been entered of record; and if it had been so entered, he could, upon good cause shown, or even if he had changed his own opinion, have set it aside at any time during the term. See Timmons v. Garrison, 4 Hum., 150.
The purchaser, at the time the affidavit was presented, had no title to the land. By the act of purchase he had submitted himself to the jurisdiction of the Court as to all matters connected with the character of purchase. Calvert on Parties, in Eq., 61, 62, m.; 15 Law Lib. He could have been relieved of his bid upon a proper application, and, if such were the fact, might-have shown that no title could be communicated to him. His contract was not complete until confirmation of the sale, and even then the title was not vested in him, and the sale only was completed. Such would have been the legal effect of the decree of confirmation, if it had bean regularly entered, and the term had passed without any objection or opposition. But while the term continued, and so long as the confirmation was in abeyance, we hold that it was within the power of the defendants, *750 or either of them, to prevent the confirmation, by satisfying the amount of the decree against them, with interest and costs. Regularly, they should have paid, or offered to pay, the money into, court, or should, at least, have deposited it in court, to await the result of the litigation; but, according to the statement of the affidavit, the defendants and their counsel were “thrown off their guard” by the promise made by complainant’s solicitor to receive the money, and had no knowledge of the intention to take a decree until they were informed it had been pronounced. |
From anything that appears in the record, the authority of complainant’s attorney to receive the amount of their debt had not been revoked, nor had he ceased to act in that character. The defendants and their counsel had been lulled into security, and relied upon the promise which had been made; and we hold, that, under the circumstances, the Chancellor should have authorized the payment of the money into court, and should have directed the cancellation or surrender of the notes executed at the Master’s sale. But, instead of this, a sale, which was made in the absence of defendants, who had been driven from the country, for less than half the value of the land, and when other proceedings were pending against it, that probably deterred bidders from bidding something like its true value, was confirmed before any of the purchase money was paid, a writ of possession was ordered, and the right of redemption had been barred by a previous decree.
Under all the disadvantages surrounding the sale, the land had brought an amount greatly larger than the *751 debt of complainants; but as tbe purchasers had paid no part of the purchase money, it was impossible that they could have been injured by setting aside the sale. The decree of the Chancellor was inequitable, and calculated to do irreparable injury to the defendants. And proceeding to render such decree as we think he should have rendered, it is ordered that the decree of confirmation be reversed, and that a decree be entered in this cause, remanding the case to the Chancery Court at Maryville, to the end that defendants may, at any time before or during the nest term of said court, pay to the complainants, their authorized agent or attorney, or to the Clerk and Master of said court, the amount decreed in their favor, with interest and costs; and on this being done, a decree will be pronounced in said court, setting aside the Master’s sale, and canceling or surrendering the notes of the purchaser. On the failure of defendants to make said payment, the Chancellor will pronounce such decree as he may deem proper. The costs of this cause, in this Court, will be paid by complainants.

Ante 534.

Post 751.